Good morning. The last case on the calendar is Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale. We have counsel for the appellants, Kirsten Anderson and for the appellee, Michael Burke. Are you both ready to proceed? Yes, Your Honor. Mr. Burke, you're muted for a second. Thank you, Your Honor. The panel has decided that we would like to give you both additional time to argue. And so instead of 15 minutes, we're going to allow each side to have 20 minutes. Ms. Anderson, how would you like to divide that time for yourself? I would like to divide it by having 15 minutes up front and then five minutes for rebuttal. Perfect. Thank you very much. May it please the court. My name is Kirsten Anderson and I represent the plaintiff's Fort Lauderdale Food Not Bombs along with four individual members of the group. This court's prior panel decision in 2018 held that Fort Lauderdale Food Not Bombs is engaged in expressive conduct protected by the First Amendment when it holds weekly demonstrations in a downtown city park to share food with all who are present to communicate their political message that food is a human right. At issue today is the constitutionality of the city's regulations that the city applied to Fort Lauderdale Food Not Bombs to shut down one of demonstrations and cite and arrest individuals sharing food under its banner during three separate demonstrations. Ms. Anderson, may I ask you a question? You concede that obviously the ordinance was repealed and that there's currently a new ordinance 1744. Do you have any constitutional challenges to the new ordinance? The new ordinance was not at issue in this case. Our challenge remains to the park rule which continues to ban outdoor food sharing as a social service in all parks. So your argument is not going to be just based on the park rule 2.2? That's correct because the park rule is what creates a blanket ban in all parks. I guess I am confused as well because the park rule hasn't been enforced since 1999. So what's the future harm relating to that park rule? That's not correct, your honor. The park rule in fact was enforced against members of Fort Lauderdale Food Not Bombs in 2014. There are arrest affidavits specifically in the record that state for example Lauren Wright on November 7, 2014 was found to be in violation of park rule 2.2. She was asked to stop serving food but continued serving. That's at docket 49-3 at 2. And in the affidavits of the individually named plaintiffs they all state that she was a regular member of the Food Not Bombs group and she was when they were present. And then there were two other occasions where the park rule was at issue. There's a juvenile probable cause affidavit in the record at 49-3 at 5 that also states he was found to be in violation of park rule 2.2. And there was another arrest affidavit at 49-4 at 5 and 6 where David Rosenthal was found to be in violation of park rule 2.2. And these all occurred at food sharings by Fort Lauderdale Food Not Bombs. In addition to our claim for injunctive and declaratory relief we also have a claim for damages as to the ordinance that was repealed. And so our claim as a really... So your position if I have it right is that even if the application for injunctive relief regarding the ordinance is moot we still have to address the constitutionality of the ordinance in order to come to grips with the damaged claim. Is that correct? That is correct your honor. Why isn't it moot though at least to the extent you're seeking prospective injunctive relief regarding the ordinance? The issue here is the city's use of its legislation which includes the park rule to ban food sharing outdoors as a social service in city parks. The city has not unambiguously terminated its policy of doing so. When it repealed certain provisions of the ordinance it left in place the park rule which is a complete ban in all city parks. And so the core case or controversy remains in this case. No I'm simply asking why would you be entitled to an injunctive relief regarding the ordinance? You might be entitled to it regarding the park rule and you might be entitled to a declaration as to that but why would you be entitled to an ordinance that the city has already repealed? Oh we wouldn't specifically be entitled to injunctive relief as it relates to the repealed provisions of the ordinance. Okay that's all I was asking. Okay. So you accept that the application for injunctive relief is moot with respect to prospective relief concerning the ordinance itself? Yeah concerning ordinance c-14-42. Right the ordinance that had all of these different places where you had to go to get approval and the six thousand dollar thing all of that has been mooted out for purposes of injunctive relief. I just want to get on to what's in dispute. Sure sure yes it appears that the city is no longer attempting to require a zoning permit for temporary use of city parks which is. So we're looking at an injunction with respect to the ordinance. Right and that's why we're just trying to understand where we are at this moment in time. That's right. And so that's why I asked that question to begin with. Are we really just addressing the park rule at this point? We're addressing the park rule as it relates to our claim for prospective injunctive relief but the ordinance c-14-42 all of the plaintiffs have claims for damages and contrary to the city's unsupported allegations by by council the both the ordinance and the park rule were applied to the plaintiffs in November of 2014 when the city was actively enforcing it against Fort Lauderdale Food Not Bombs. Having gotten over this justiciability question let me ask you first question very interesting question raised here. It's relevant for purposes of the unincorporated organization not the individuals but for purposes of 1983 who or what is a person? Is an unincorporated organization that is not a union a person? The reason I raised the question is it's raised its head in this case if indeed that's right it will work a profound impact on 1983 cases by hundreds of unincorporated organizations local NAACP's local civil rights ACLU's etc but how how do you argue that an unincorporated organization is a person that's able to sue and be sued under 1983? I think the easiest response is to just go back to this court's or to the supreme court's decision in Monell where the person extends both to natural and legal persons and the court decided yes that's correct in that case the court was looking at the legal entity of a municipal corporation and and whether or not or they could sue or be sued. You did have a corporation the reason I raised it you've got a 10th circuit case out there that suggests that an unincorporated association is not a person for the purposes of 1983 and they examined the legislative history and I suppose the understanding at common law way back in the 1870s when the statute was passed and this real indication at least as the common law that unincorporated associations like partnerships couldn't sue or be sued at common law. Of course you have a supreme court opinion saying something quite different with regard to an unincorporated labor union but at common law could an unincorporated association sue or be sued when they pass the civil rights act the first iteration of 1983? They could not neither could corporations but both have recognized as legal entities that can sue and be sued and what we're really talking about with an unincorporated association is a group of persons a group of natural persons who are associated. There's no question the natural persons can sue or be sued I'm only asking about the district court actually ruled in plaintiff's favor on this issue and collected cases and found persuasive a southern district case the gay straight alliance case and one of the things that the court in that case did was recognize that and said that the 10th circuit's decision had failed to recognize that the section 1983 is actually the Ku Klux Klan act and so one of the purposes was to be able to sue as a person the the Klan members who were wreaking terror and that's someone who can be sued and there's sort of this mirroring logic that if you're using the term person as an individual who can be sued that that should have the same meaning for the a person who can sue and there's been a long history of both an implicit and explicit recognition of unincorporated associations as entities that can bring suit under section 1983 for example the former 5th circuit and the familias unidas case that we cited to in our papers that you know the plaintiff in that case was was an unincorporated association there's a long history of NAACP cases in front of the the U.S. Supreme Court we respectfully suggest that this 10th circuit case is an outlier as the district court correctly observed and that the 11th circuit should not follow the reasoning in that case and instead recognize that unincorporated associations do have our assume for the purpose of my question it's clear that the individuals can sue under 1983 and let's just assume that an unincorporated person unincorporated association can as well I have sort of a general merits question for you suppose the city of Fort Lauderdale had said we're banning the distribution of all social services in our parks whether it's feeding the hungry clothing the needy providing shelter for those without homes providing hygiene or medical care we just don't want that in the park and so we're keeping that out of the parks completely clear ban could they do that as opposed to what they did here I they they they could regulate they can absolutely regulate the park as long as that interest is unrelated to the suppression of expression and what the so you would agree that if there was a flat out ban on the distribution of all social services in all of the parks in the city they could constitutionally do that so long as they could show that they're applying this even-handedly across the board for all social services food shelter hygiene medical care the whole kit and caboodle they could do that if they wanted to but well that's actually what the park rule says I think the issue here is singling out sharing food as a social service um the park rule says something a little different it says park shall be used for for the general public's park shall not be used for business or social purposes unless authorized pursuant to a written agreement with the city so it suggests that at least under some circumstances perhaps the city has the power to to authorize it now it may be that as a licensing regulation this fails because it's utterly unbridled etc but I'm asking a different question suppose the city of Fort Lauderdale had simply said no social services shall be distributed in any of our parks could they constitutionally do that wouldn't that be content neutral I think the issue here is the provision of food as a social service which is what what the the city has said that you can I mean having food in a public park is something that doesn't interfere with the normal use of the park it's a regular use of the park people have picnics people have um no no we're talking about food as a social service where we're not talking about a family of four sitting at a picnic table and having lunch and a nice sunny afternoon on a Sunday I'm talking about how they define a social service a service designed and intended to large numbers of hungry people all I'm asking is I'm not saying that's what they did here could they ban all social services including but not limited to dispensing food to the hungry in the parks I don't believe so as it relates to food and here's why first of all there is no minimum number of members of the public that the ordinance applies to this is not a large group events ordinance it applies to sharing food with as few as one or two members of the public the other reason is is that you have to look at the purpose for which food is being provided and it gives too much discretion to city officials to pick and choose what is allowed and what isn't as it relates to sharing food in a public space the question was banning giving out food as a social service completely and so the question is if there's a rational basis for the city making that determination why would that not be constitutional I don't think that that would be nearly tailored because it does implicate speech interest you have to look at the purpose for which food is being provided to determine whether or not food sharing is allowed how is it how is it not content neutral because they're not looking at the speech they're saying there is no food service that is being allowed if it's being provided for any social service it doesn't matter if it's a church if it's a temple if it's a uh you know an organization that uh that believes in uh in in promoting veganism it's irrelevant it applies across the board why can the city not make that determination well in our case we have a situation where our clients have but i'm not asking about your case i'm asking a general hypothetical question well the the hypothetical question about social service as it relates to a group that's sharing food for a political purpose but the city has classified that as a social service but the food sharing as a social service the city has to make these discretionary determinations about why someone's sharing food and isn't and this the this court's prior panel decision specifically talked about how sharing food um in in this context it like communicates message and is expressive and has been expressive for you see i thought you assumed what you would say to me is that's an interesting question marcus but that's not the question we have because in this case there is an ordinance that existed and we're suing for damages with regard to the ordinance and there is a park rule that existed so they didn't create a flat all-out ban on all social services certainly not for food um and so that may be an interesting question but that doesn't illuminate what's happening here have i missed something well i i think that what's happening here is whether or not you can actually get permission i i think is a is a big question either under the ordinance or the park rule and whether or not it is a blanket ban or not um what they did here was can't amount to a flat ban even though if you read the ordinance and park rule together it didn't literally ban it uh that's that's correct it but i will say that the ordinance it all parks are zoned p it's a prohibited use you absolutely could not have gotten a zoning permit um that they're the only park where you theoretically could have gotten one is stranahan park and and i i see my time has expired but the the last point i wanted to make just related to this is that a content neutral ban on on sharing food we could just look at the orlando that first vagabond's church which was the 11th circuit and bonk where you didn't look at the purpose of sharing food you they just restricted large groups over 25 um that would be a content neutral restriction and that certainly was upheld as being a reasonable restriction so are you i'm sorry but are you suggesting that that the um first vagabond uh case the reason that it's distinguishable is because of the the numerical number in the ordinance it's the numerical number and also that that there was no inquiry into the purpose it was all events that involve food um regardless of of the reason why it's similar to the thomas versus city of chicago park district case where uh you know in a park they have they um authorize permits for assemblies greater than 50 people it's about regulation of park use and the size here there's no this isn't even about large groups it's uh it's as few as one person in the city may i ask you a question i know your time is up but um the um the city never created i mean my understanding of the correct me if i'm wrong is that the city never created a fee scheme um for the ordinance 1442 because it wasn't enforced long enough um is it your argument that the ordinance um is is the is that provision is it that is an unconstitutional fee scheme is it right for our review if it was never enforced yes because it was enforced they arrested people for not having a permit i'm saying they the fee scheme because they never created a fee scheme that's my understanding of the record yeah well the the reason the city suggests that is that that the general fee is six thousand dollars but they're suggesting that they had discretion to adjust that downward depending on how the administrator feels so there was a fee scheme in place they were just suggesting that maybe it didn't have to be so so high okay all right thank you very much council uh mr burke uh you have 20 minutes thank you uh good morning uh michael burke on behalf of the apple east city of fort lauderdale the city's position is that the district court properly applied this court's uh embankment decision in first vagabond to the issues that it was tasked with dealing with on remand the first vagabond a decision which relies on uh clark versus uh uh community uh excuse me uh community for can you tell us mr burke i'm sorry to break your flow but what's properly before us what are the justiciable issues that are before us good question uh the i mean before we go to the merits i'd like to know what you think we have to decide i think first the court has to decide whether uh the the primary plaintiff here uh fort lauderdale food not bombs is a person who can bring claim under uh 42 usc section 1983 the uh now it calls itself an unincorporated association the the the record is that it's not a legal entity of any kind in any state that i'm aware of it has no formal membership no formative documents no elected leaders no record of their members no written proof of members no bylaws it in fact doesn't even call the people who participate in its events members it calls them volunteers uh it you know it's difficult to discern what it is if anything but it's certainly not a person uh and even assuming arguendo that you were right about that mr burke the individual plaintiffs certainly are persons under 1983 so we would have to face the issues anyway but it's an interesting question that you've raised about whether an unincorporated association can sue or be sued under 1983 the supreme court told us in alley that an unincorporated labor union could sue under 1983 they that was a holding they don't say much about it it's in a footnote but they sure say it and they say it unambiguously um what's the difference well uh again i would say say a couple of things first as you say there was no analysis in that uh decision number one number two and probably most importantly uh you know unincorporated association is a broad term uh and a labor union which has a charter formal membership leaders all of the things attendant to an actual organization of some sort uh as you had in that case is not here and what you have here but what's interesting about the supreme court opinion is there's no discussion about any limitations on their holding they don't talk about the peculiar circumstances relating to the unions the pervasive character of unions none of that they simply say in a footnote a union has standing to sue under 1983 as a person literally speaking it's really not a standing question it's whether it states a claim as a person but let's hold that issue aside um would you have us hold for the first time that all unincorporated persons are unable to sue under 1983 no you're an enormously significant ruler no your honor and i would not have uh i don't urge that but i do urge the court that when it looks at fort lauderdale food not bombs and what the record is here that it find that fort lauderdale food not bombs whatever it is does not meet the definition of a person your honor uh to to continue on with your with your question uh this the the ordinance here and i think it's important to know that the city there's two things of course that have been raised in the papers one is the the ordinance which amended a land development regulation of the city to effectively change the city's regulation as it relates to social service facilities social service facilities it set forth regulations as to where they could locate social service facilities and it created a social service facility that is called uh uh off off-premises food distribution centers and so that's that that's where we we we come into a land development regulation as it relates to um this provision of food at little or no cost at many locations not just parks or otherwise where they can be locate and located and what is needed to do that uh so you have a zoning regulation secondly you have a park rule and i think it's very important that the court note that the park rule is not adopted by ordinance it is approved by the city commission but it is not an ordinance it's not a law it is it is a it is a rule it doesn't have any mechanism of enforcement to it let me ask you question if i can obviously we have to address the ordinance at least with respect to the damages application so we can't but with respect to prospective injunctive relief your colleague concedes that's that issue is moved but it's still in front of us for purposes of damages um when you read together the ordinance and the park rule is it the position of the city of fort lauderdale that you have attempted to ban completely all sharing of food as part of a uh uh social service is that what you've done or do you allow it at least under some circumstances in uh at least in stranahan park so your honor the the zoning regulation allows for social services at numerous locations throughout the city uh you know in various zoning districts when you say the ordinance are you saying about the new ordinance i'm sorry to interrupt you no you know your honor it would be the old ordinance the ordinance uh has eliminated this uh outdoor food distribution center from the definition of social services and that's why it has mooted any prospective relief related to public feedings because that has been removed from the the social services ordinance of the city i don't think i've made my i don't think i i my question is clear let me just sort of come at it one more time if i decided today that i wanted to distribute food as part of a political protest where my claim was the government had misallocated its resources it spent too much money for the defense department and not enough on feeding the the hungry and the poor and i said to the city i want to proceed to demonstrate my message this way in your parks can i do that or is there a absolute ban on that so there is a park rule that hasn't been enforced that does speak to that issue your honor as you pointed out earlier with the exception that by agreement businesses and social service use of parks can be arranged for instance during the covid crisis i mean it's well known that city and county parks are used to provide social service vaccinations to the public at parks so that that is being done and it can be done so you don't take the position that there's an absolute ban no your honor there's there's not an absolute ban you are correct in how you described that earlier it has an exception if if under the park rule again under the ordinance doesn't exist at all there's nothing about food sharing uh in the in the current social services ordinance uh of the city now the which brings me to my next question if you look at what the panel did on round one in this case the panel ruled and i'm quoting from their holding on page 1245 of the court's opinion the panel said in the first iteration of fort lauderdale food versus the city of fort lauderdale quote the nature of f l f n b's activity combined with the factual context an environment in which it was undertaken lead to the conclusion that f l f n b engaged in a form of protected expression so they've already answered the first question whether or not this foils on the near side of digging down into the second set of questions which include whether or not these ordinances and park rules violate the first amendment now it looks to me like you've got to examine this under some form of intermediate scrutiny because it looks to me just speaking for myself that the ordinance and the park rules are content neutral they speak broadly to a variety of social services not limited to food so i want you to assume for the purpose of my question that we're in the realm of content neutrality and intermediate scrutiny you would agree with that would you not yes your honor i would that's what the district court applied and i would agree with that okay so with regard to intermediate scrutiny we ask whether the ordinance regulation or rule has been narrowly tailored to accomplish a substantial government interest not related to the suppression of any particular message or idea and it must leave open ample alternative channels for communicating they the particular message or information tell me why the ordinance and the park rule has been narrowly tailored your honor it is narrow you would agree it would have to be narrowly tailored right under under the intermediate scrutiny uh yes your honor it would be uh it would need to be narrowly tailored i would start off by my answer by saying that the regulation itself does not seek to address any form of speech or expression so but by definition when you're going into it much like the clark case that cited by this court in the vagabond case that prohibited camping uh in the on the national mall or lafayette park you know camping was not looked at as expressive activity and so therefore when you're developing a regulation that doesn't relate to expressive activity you know you you certainly don't go into it with the same uh basis that uh that that you for regulating expression and the standard that we're now applying and so that's kind of the way the district court looked at this and that is when you look at this it is only apparently in the case of fort lauderdale food not bombs that they because as you just quoted earlier from the from the first iteration of this this court's decision is only when you combine all of these things that it does that uh that it it uh it constitutes some form of protected expression so what i would say your honor is that there are numerous places where they can engage in that activity uh they could if they had ever asked and there's nothing in the record to suggest that under the park rule they asked to seek to enter into some agreement with the city because of their particular way of of sharing food with the public and the expression that it involves that that that could have been arranged and still protect the the sanitation the garbage removal and all of the other things that we cite all the other unpleasantries that we cite that led to the that led to this dispute about that when i look at the park rule it says park shall not be used for business or social purposes unless authorized pursuant to a written agreement with the city that's the beginning and the end of what it says it provides no guidance to the city it provides no rules of the game to the city if this is a in the city we don't know who the decision maker is we don't know what considerations are relevant we don't know how it would be exercised how would this possibly pass a reasonable time place and manner restriction well your honor again there would have had to have been some attempt to to apply it in some way where it's it's never been applied uh and so by its very nature what fort lauderdale food not bombs does is you have to look at what they actually do you have to have an as applied challenge for them to bring the claim it's it's you know providing food to people or clothing to people or medical care to people is not expressive activity and that's what the district court says it's not by its very nature expressive activity and so it it can only really be judged under an as applied challenge so if you look at it facially yeah i mean it doesn't attempt to regulate expression of any kind and so yeah it doesn't have uh uh the requirement that people act in a certain time and that it be subject to an appeal and it doesn't all those provisions that you would have if a regulator has any provisions it doesn't it doesn't because how is the city to know when to grant authorization pursuant to a written contract and when not what are the terms and conditions that a city might reasonably use in deciding whether to enter into an agreement with an organization and again we're starting we're not starting with a clean slate as i said we're starting with a the law of this case is that it is expressive constitutionally expressive first amendment activity to propagate the message of food not bombs by serving the homeless food the the circuit has already told us that in round uh in round one what terms and conditions is the city going to use in making that determination as applied to a particular group that says i want to do this so your honor uh there is nothing in the record that would i would be able to answer that question except to say that for the last 22 years it hasn't been applied so uh you know again we can you know what we're talking about here is truly how many angels can dance on the head of that pin because it is it is something that is not uh been done it it it is it is it is an argument that is made without any factual content your is it your view that because they didn't proceed under the park rule they can't make an as applied challenge at all to the park rule it's it's my view that number one they were they being food for you can't even cite fort lauderdale food not bombs i mean it's not an entity who would you cite uh the plaintiffs who are in you ask about just disability the plaintiffs that are in the case they were never cited for the park rule or the ordinance um what i would say in direct answer to your question is that the the the issue is that um they would have had to have sought something from the city provided some explanation to the city uh for that to for that to arise in an as applied way the only evidence in the record about any citation that has ever been issued during the three week period of time that we're talking about back in 2014 november of 2014 is that people received people not these not the plaintiffs but people received citations for violating the ordinance and it mentioned in there the park may i ask you a question because i do want to confirm this i want to make be very clear about this so the record if i went into the record right now neither the uh organization food for bombs or food not bombs and none of the named plaintiffs were cited uh or given any kind of uh um the violation that required a payment of a fee that's correct your honor that's my understanding that that that fort lauderdale food not bombs and none of the named individual plaintiffs were ever cited council during her argument indicated that some people received citations they did for it mentioned the park rule the park rule if it were to be enforced do you know if do you know if any of those individuals and i understand that none of them are named plaintiffs or uh in this case right now but do you know if any of those individuals had to pay any fees i do not know the answer to that question your honor okay thank you um and i don't i don't believe let me ask you slightly different question is stranahan park the only park where they could arguably make an application to distribute food as part of their political message well uh uh certainly under the ordinance it would have been the the only uh location because stranahan park is not zoned park park was property zoned park were excluded from social service facility use you couldn't build a health care center in a park for instance um or or do this the stranahan park was zoned part of the it's in the city's downtown core and it was zoned regional activity center and it allowed as a conditional use in the regional activity center uh outdoor feeding distribution centers which is what during that three-week period of time this would have been so they they could have applied at stranahan park for that if they had chosen so that was the one part they could have at least sought an application let me ask you i was much interested in the response you just gave are you saying in effect that this unincorporated association and the named plaintiffs don't have standing to challenge the park rule that this is a question of justiciability yes your honor i absolutely am saying that uh they they have they have never never been cited with and they wouldn't be cited with a violation of it the way it's a rule and so what happens is it's not an ordinance it's not a law it doesn't have any enforcement mechanism to it so the way in which a park rule would be enforced is if you're violating a park rule someone from the city would go up to you and say you're violating that park rule you need to stop and if you don't stop and you keep doing it then eventually they'd probably have to get a law officer and give you a trespass warning and say if you won't stop violating the rule we're going to have to ask you to leave the park uh you know so so what happened here as i understand it in the record on november 7 a food distribution that they that food not bombs was engaged in was interrupted by the police and again my understanding is that that was pursuant to the ordinance um i don't and i understand that sometimes for citations for the ordinance the officers have mentioned in those citations which seek to enforce a municipal ordinance the the zoning code let me ask normally when we speak of standing justiciability for a live case of controversy the first requirement is that there be an actual and immediate injury not something that's hypothetical or conjectural i understood them to claim among other things that they went ahead and tried to distribute food and propagate their message and the city busted up the rally and that substantial costs were incurred in in the course of that would that not give the organization and the individual standing your honor individuals that were arrested for that no i'm not talking about the individuals who were arrested okay i'm talking about the organization that put on this this message and the name plaintiffs who were members of the organization is it your position that the organization cannot establish any actual injury in fact yes your honor again the the name the named organization as we say and use the term members there is no official membership they in fact call them volunteers so if if if an organization something that's not a legal entity invites volunteers so this is a different question about whether they can sue under 1983 i'm not asking you that question assume for the purposes of my question that this organization unincorporated association can raise a claim as a person that may sue under 1983 that's a debatable question you say no they can't let's hold that aside and assume for the purposes of my question that this association in fact can sue under 1983 is it your view that this association has no injury in fact and has no standing to perfect this lawsuit no your honor i believe that they would have standing if in fact they had uh they they were a person they were an entity okay so your argument is not just disability it's just they can't stay the claim because they're not a person under 1983 they have my argument is there's no just disability under the park rule under the ordinance as i understand it during the three-week period that it was in effect there is as you say and we're describing in your question on november 7 a food distribution by by food not bombs was interrupted and as you say some folks who who claim to be affiliated with that entity if that's what it is uh were given citations i believe that under this court's law under under the 11th circuit law that would be sufficient uh for the organization to sue that is to say to have stick that is to say i'm sorry but your your basic position is they can't sue for a different reason not because they but because they're not a person but for number one for the for the ordinance of the park rule they can't sue because it's never been applied to them that's what i say they're not applied to them i have a question about the park rule and i'm now confused about the status of this park you said it was never zoned as a park and it was never subject to the park rule rather it was zoned as a regional activity center at this time that did allow feeding and the violation was just the ordinance is is that your position uh almost uh the this i do believe this park stranahan park would have been subject to the park rule if the park rule was going to be enforced the most of the city i believe all of the city's other parks have a zoning designation attached to the land that they're on of park and i don't want to talk about other parks i want to talk about this park you're saying it wasn't zoned as a park so how was it was it subject to the park rule or not i guess your honor i think it would be subject to the park rule if the park rule was going to be applied it was a park but the land it was on was zoned center which provided under this three-week ordinance uh the ability to unlike other other land that was zoned park you could come in and you could seek a conditional use to have a social service facility on land zoned regional activities does that mean that you could have sought a permit to to do that activity is that when you is that what you're referring to yes that's correct because it was zoned for that particular use that's correct well it was zoned regional activity center which allowed the use as a conditional use the city's uh again this was a zoning regulation the the ordinance was a zoning regulation and it regulated where social service facilities could locate and it regulated their operation and normally zoning ordinances are are rational review are they not yes because they're of course not generally regulating expression it's regulating you know conduct is regulating the activity that one engages in on the property but if it's regulating expressive conduct which is what the first iteration of this case held then it gets some first amendment protection and we've got to go to some kind of intermediate scrutiny you do not dispute that do you i do not your honor and that's what the district court i mean that's what we're left with because of what the panel held on round one um that's correct let me let me ask you the same question i asked your colleague uh earlier could you simply ban all social services from being distributed in the park if you wanted to yes your honor i do believe there'd be a rational basis for banning the provision of social services uh in the park but you have not done that well as you point out the the park rule which hasn't been enforced in 22 years does have the uh the last uh phrase to it that your honor quoted and so it there is a potential exception thank you yes your honor thank you all thank you miss anderson you have five minutes remaining thank you before you begin when you say damages are you talking about compensatory damages or just nominal damage the the demand was for uh compensatory damages and what what is the compensatory damage claim i mean what is it or somebody injured or or i know it's related to uh non-economic harm um as it relates to the organization um there was some significant diversion of resources um during the time that the these ordinance and the park rule were uh being enforced against uh their demonstrations and then also as it relates to individual plaintiffs uh we've pled um emotional distress um as it relates to okay you've answered my question it's not a you're claiming uh compensatory damages not just nominal damage that's that's correct um and and what i will say is that as it relates to the individual plaintiffs um there is no dispute that they were all present during the time when the the police came arrested members that they were they were associating with during this political protest um and on one occasion the entire demonstration was shut down the u.s were these individual plaintiffs did they receive uh citations or were they required to pay any kind of uh fines they did not not um but um the the organization itself um did put together a bail fund when they were having to bail out i'm talking about the individual plaintiffs were they were they did they come out of pocket any money no out-of-pocket expenses that's correct okay well even without fines they weren't given a citation they were not they were not given a citation but as it relates to council's argument that that means that they didn't have standing that's not the legal standard for standing the question as it relates to the park rule for prospective injunctive relief is whether there's a credible threat of future prosecution um and then the uh the standard as it relates um to let me stop you write that credible threat of future prosecution we already know the ordinance is gone so now we're talking about the park rule right we're talking about the park rule and how is it credible threat a future prosecution of park rule if you haven't even asked to have an exception and to have a um if you've never applied to work out anything with the city well that's again not the legal standard that the supreme court set forth in a long time i'm not i'm not talking about standards i'm talking about in fact tell me how that's a credible threat that the you haven't asked to for anything not even a permit as for can we go and do this with the city in agreement under the park rule because without permission it's it's banned and um they're all banned unless you get permission okay and you've standards under which permission could i i'm not saying i'm not saying you had to i'm just trying to understand the facts that's correct as we take the facts this is a situation where the ordinance is gone and the park rule bans everything unless you get special permission that's correct and and one point i want to make you've not asked for special permission you stipulate to that i i would that's correct okay um and what i will say um is that the u.s supreme court case in the uswa bunam versus przewski case that we filed as supplemental authority um discussed a constitutional injury sufficient to at a minimum confer nominal damages and in that case um it was an individual who was told that he had to leave and couldn't proselytize and um just that that is a completed constitutional injury being losing that opportunity to speak okay i have one more question here on the park rule um when they disrupted this group um they really were operating i mean it looks like to me under that ordinance i mean they enforced the ordinance they didn't come in and enforce the park rule they came in and cited it for violation of the ordinance they didn't that disruption those citations were for the ordinance the the citations cited both the the park rule and the ordinance and where where will we find the other citations in the record sure so um i this was the lauren wright citation at docket number 49-3 at two and then all of the affidavits of the individual plaintiffs all discussed that citation and that she was a regular member of the group and they were present when she was arrested on 11 7 2014 um and it states that she was found to be in violation of park rule 2.2 she was asked to stop serving food but continued serving there um there are two other arrest affidavits in the record um that are also discussed by the affidavits of the plaintiffs at 49-3 at five and 49-4 at five and six that all reference the park rule and um one other point i will make about the park rule is that when the city commission adopted ordinance c-14-42 in the legislative memo it said one of the purposes of adopting these zoning regulations was to allow it to resume enforcement of park rule 2.2 it had previously been enjoined from doing so by a religious ministry love thy neighbor um and in a religious freedom restoration act case in state court the abbott case and so um one of the reasons why the city then stopped after this flurry of arrest activity is that arnold abbott went back into court to enforce his injunction against the city and then the city voluntarily declined to continue arresting while all these proceedings were taking taking place um so the other point about the park rule may i ask you a question though because i have the um uh some of the affidavit declarations in front of me and like the declaration of hayley becker only references the ordinance it references it makes no mention of the park rule so i'm just kind of curious about that um well i i'll just point as it relates to hayley becker at 40-25 at paragraph 12 um she references that lauren right was a food not bombs member cited at their demonstration while she was present and then we also separately have that arrest affidavit that references the park rule um in the record um and um i you know i if it would be useful i have all of the pinpoint sites of all all the places where this is discussed i could file something supplemental to the court um to point this out because this is really not factually correct the city's assertion um that it never enforced the park rule um and and one thing i will say is that when the city decided to repeal these regulations in the zoning ordinance the same city commission that's responsible for adopting park rules decided to leave park rule 2.2 in place um i'm looking right now at the complaint affidavit and was it was it against nicole lauren nicole right is that who you're referring to that's correct okay well in the citation it only charges her because obviously you have to be charged in the citation and it only charges there sydney it only mentions the city ordinance so the charge is the city ordinance uh 47 1831 and city ordinance 16 one it says that's correct but then if you look at the the what the affidavit says but the charge the citation is only for the ordinance it makes no mention of the rule that's correct because the rule itself is not an independently arrestable city comes in but then again the question becomes where is the teeth because now that ordinance is no longer in place so moving forward what what happens to the to the rule the rule hasn't has no basis then you can't be cited now that's that's not correct what mr burke said is that the police can come and tell you you have to stop and you have to leave and if you don't you can be arrested for trespassing and you can be given a trespass warning which bans you from returning to the park in the future the those are constitutional harms both as it relates to the first amendment having to cease first amendment protected activity and having to leave a city park that you have a lawful liberty interest in being present in so even if um the park rule itself doesn't allow arresting the city ordinance it's it is allowed because if you're in violation of the park rules you can be ejected and trespassed from the park monsieur let me ask you a different question to the extent that the organization and the individual main plaintiffs are suing the city for a violation of the first amendment with respect to the park rule you agree that you never sought the relief from the park rule you never applied that's correct can you perfect an as-applied challenge without ever having attempted to go to the city uh and getting a contract so that you could pursue uh your regime yes your honor because the the basis yeah the park rule is being applied to prohibit our clients constitutionally protected uh demonstrations and um the in in thornhill um and versus alabama and shuttle's work the the supreme court has long held that when your protected activity is banned um that you can continue to engage in your protected demonstrations and challenge the validity of the kind of the permit scheme without first having to apply for and be denied a permit um so don't you but i guess my i guess the the the issue i'm having with with your argument is it seems to me we don't know if they would deny you a permit because you haven't sought one it is constitutionally impermissible to have a permit uh scheme where there's absolutely no basis for knowing whether there's a denial or a grant there's there's no criteria um there there's nothing under those circumstances there could be uh it could be a church group it could be a a a temple it could be anyone who wants to give distribute food to the homeless and they would still go have to go out and seek a permit if they want to have uh distribute food at that particular location at that park right and what for um you know a recreational activity social activity absolutely and what the supreme court has said is that even when you can rightfully um issue permits for such activity that you can't do so in a way that leaves it up to the whim of the licensing official to grant or deny um permits because the risk of suppression of speech of of arbitrary enforcement of picking and choosing who's allowed to be in a park and share food and who isn't is too great and that's why the supreme court has what if they what if the thing was they said well you can distribute the food but you have to distribute the food between uh 6 p.m and 8 p.m on uh on a sunday in terms of just a regulation would that be permissible i mean if if it's a it it could potentially be a a reasonable time place or manner restriction um and one point i will say is that this is absolutely not nearly tailored it it applies to very small groups it's not a large group event permit under any legal test that this court could apply it's overbroad um the council was referencing zoning districts and the availability of basically opening a soup kitchen on private property is an example of an ample alternative but we're really talking about the regulation of public forums in this case and so we have to look at what is available in public parks um and when there's no provisions by which the city ever has to listen or grant a permit that's inherently inconsistent with a time place or manner restriction let me ask you a fact question in the record can i tell if i look in the record how many people actually gathered on the meeting was busted up um i'm not sure if that's apparent from the um from any of the arrest affidavits uh there there is some video in the record of um of several of the arrests would that reveal how many people were there roughly yes and what would show me you've seen the video and the video is in the record um are we talking to five ten twenty fifty a hundred two hundred five hundred a thousand can i discern numbers we're probably talking under 50 and that also includes police and members of the media that were present not not just the usual um group thank you um you answered my question anyway thank you uh just right chris anderson would you like to wrap up because you've gone way over now thank you yes of course thank you your honor um i just uh one thing i wanted to conclude which is where um mr uh burke started which is that all this court has to look at is the first vagabonds case and um we agree i think the first bag and bounce case demonstrates why this ordinance is and park rule are unconstitutional in the vagabonds case um there were ample alternatives the the permit restriction only applied to a two-mile radius it was for all applied equally to all groups more than 25 and you could still get two permits a year in the two-mile radius and then it was unlimited in all city parks there was no restriction um and that is completely different from what we have here and it was not a discretionary permit scheme it was ministerial just as the supreme court requires um and we uh with with that i respectfully um rest on the briefs and i thank your honors for your time today thank you miss anderson and thank you mr burke we really appreciate your arguments they were they were very um thoughtful and we will take the matter under advisement thank you very much have a good day both of you thank you